(75 South. 805)

No. 22380.

BARR et al. v. YOUNGEVILLE SUGAR FACTORY, Limited.

In re BARR et al.

(May 14, 1917. Rehearing Denied June 11, 1917.)

(Syllabus by the Court.)

1. BANKRUPTCY ⬤⟺254—TRUSTEES IN BANKRUPTCY—EXECUTORY CONTRACTS OF BANKRUPT.

Trustees in bankruptcy may either assume or renounce executory contracts of the bankrupt as they deem best for the interest of the estate.

2. BANKRUPTCY ⬤⟺254 — EXECUTORY CONTRACT OF BANKRUPT — ENFORCEABILITY — PREFERENCE.

The contract obligation of a foundry company to replace broken plates of presses sold by it to a sugar planting company cannot be enforced against trustees of the bankrupt estate of the foundry company, when they have not assumed such obligation, and its execution by them would amount to a preferential payment contrary to law.

Certiorari or writ of review by J. H. Barr and others, trustees in bankruptcy, to review a judgment of the Court of Appeal against them in favor of the Youngeville Sugar Factory, Limited. Judgment of the Court of Appeal and judgment of the district court reversed, and ordered that plaintiffs recover of defendant.

Borah, Himel, Bloch & Borah, of Franklin, for applicants. Burke & Smith, of New Iberia, for appellee.

LAND, J. The plaintiffs, trustees in bankruptcy of Payne & Joubert Machine & Foundry Company, sued the defendants to recover the sum of $1,054.86, representing the purchase price of certain filter press plates sold and delivered to the defendant, who in its answer admitted that it ordered and received the plates from the plaintiff trustees, but averred that the same were furnished to take the place of certain broken plates, purchased by the defendant from said foundry company, before it went into bankruptcy, in compliance with the agreement between the parties.

Defendant further averred that the temporary receivers of the bankrupt estate were authorized and empowered to continue and carry on the business as conducted by the bankrupt firm herein until the further orders of the court, if in their judgment it was in the interest of the estate to do so, and, in the conduct of said business, to make such contracts and incur such expenses as in their discretion may be necessary.

The original petition of the plaintiffs alleges that the temporary receivers were ordered to continue the business as a going concern, and that plaintiffs as trustees were also ordered by the court to continue to operate the business as a going concern; and, in the usual course of business, manufactured, sold, and delivered the said plates to the defendant.

The petition for the appointment of the temporary receivers represented to the court that the bankrupt had on hand a large number of contracts aggregating about $200,000, and that it was advisable that said contracts be carried to completion, not only for the large profit to be earned, but to utilize the large stock of material on hand.

Defendant avers that, prior to the bankruptcy proceedings, the foundry company agreed, as part of the contract for the purchase of an entire filtering press, to replace all defective plates, with sound plates, without cost to the defendant, and that, after the foundry company had gone into bankruptcy, the same trouble occurring, the defendant made requisition for the necessary plates, which were furnished.

The Court of Appeal held that said agreement was proven, and that the evidence made it "reasonably certain" that the obligation to replace the defective plates was "in effect assumed by the trustees."

The opinion of the Court of Appeal concludes as follows:

"The obligation so contracted was certainly not destroyed by the appointment of the receivers, and remained a valid obligation of the bankrupt estate, as interpreted under the state laws. Peck v. Southwestern Lumber & Exporting Co., 131 La. 177, 59 South. 113.

"In this case the trustees merely carried out the obligation of the original contract which they assumed to discharge under the conditions primarily imposed on the bankrupt. The agreement between the parties shows very clearly that the defendant company was not to be charged for the new plates, the price of which is demanded in these proceedings, and the demand of the trustees was therefore properly rejected."

The first assignment of error made by the plaintiffs is to the effect that the averments of the answer were insufficient to warrant the introduction of evidence that the trustees had in fact assumed the alleged contract.

We think that the averments of the answer, and especially the one that the plates were furnished "in accordance with the contract," sufficiently specific to warrant the introduction of the evidence.

[1] Another error of law assigned is the alleged ruling of the Court of Appeal to the effect that the authorization given the receivers and trustees to conduct the business as a going concern, "if in their judgment it is to the interest of the estate to do so," bound them to assume all the contracts, defaults, and obligations of the bankrupt.

The Court of Appeal found from the evidence that the contract in question "was in effect assumed by the trustees," and, as we read the opinion, did not hold that the permit per se to continue the business bound the trustees to assume all the contracts and obligations of the bankrupt.

The decision of the case therefore hinges on the question of fact whether the trustees assumed the obligation of the bankrupt to replace all broken press plates previously furnished to the defendant.

There is no evidence that the trustees ever agreed to do so; but, on the contrary, the invoice and correspondence shows that they sold for cash and insisted on payment of the price of plates manufactured by them.

The trustees found at their New Orleans plant two valves, which had been returned by the defendant before the bankruptcy, and they took these valves and gave the defendant credit on his account with the estate.

In March, 1910, the defendant purchased from the foundry company two Johnson filter presses, and a large quantity of other sugar house machinery, for the price of $12,-683, payable part cash, and balance on terms of credit; the last note maturing on December 15, 1910.

Subsequently there was a parol agreement between the parties that the foundry company would replace all broken plates free of cost to the defendant.

Before the defendant became a bankrupt in June, 1913, a considerable number of broken plates were replaced by the foundry company.

In the latter part of the year 1913, the defendant ordered 76 filter press plates from the trustees' factory, which were furnished and delivered, with a bill for $1,054.96, payable in cash or within 30 days.

It was not until November 26, 1914, that the defendant notified the plaintiffs by letter that it would not pay the account, as it considered the trustees bound to carry out the contracts of the bankrupt. There is not a word in the letter indicating that the trustees had agreed to furnish said plates free of charge.

The receivers were authorized to make such contracts and incur such expenses as in their discretion might be necessary.

The purpose of the authorization was to complete contracts "on hand" promising a

large profit and to utilize the large stock of materials "on hand." It is obvious that the furnishing of plates worth $1,054.96, to the defendant, free of cost, was never contemplated by the court, receivers, or trustees, and would have been clearly contrary to the laws governing the administration of bankrupt estates.

The defendant was at best an ordinary creditor holding a claim in the nature of warranty against the bankrupt estate, and as such had no legal right to be paid by preference.

The petition of the receivers for authorization to carry on the business of the bankrupt shows that they intended (to use their words) "to complete the contracts on hand and such as may be secured, pending their administration."

The order of court granting the authorization left the continuing and carrying on of the business and the making of contracts to the discretion of the receivers.

Defendant's contention that this order of court bound the receivers to assume and discharge the obligations of the bankrupt created before the adjudication in bankruptcy is without legal merit.

The rule is that:

"The trustee may either assume or renounce executory contracts of the bankrupt as he deems best for the interest of the estate." Corpus Juris, vol. 7, p. 226; Collier on Bankruptcy (10th Ed.) p. 1033.

[2] Defendant's claim grew out of a contract made and executed in 1910, and was a demand in warranty. The satisfaction of that demand by the trustees would have been merely the payment of an obligation of the bankrupt out of the assets of the estate to the prejudice of creditors.

It is therefore ordered, adjudged, and decreed that the judgment of the Court of Appeal and the judgment of the district court herein rendered be and are annulled, avoided, and reversed; and it is now ordered and decreed that the plaintiffs J. H. Barr et al., trustees, do have and recover of the defendant, the Youngeville Sugar Co., Limited, the full sum of $1,054.96, with 5 per cent. per annum interest thereon from January 1, 1914, until paid, and for all costs of suit in the three courts.